IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TRUSTEES OF THE NATIONAL** \* | |
| **ELECTRICAL BENEFIT FUND,** *et al.*, \* | |
| \* | |
| **Plaintiffs,** \* | |
| \* | |
| v.   \* | Civil Action No. TDC-23-00433 |
| \* | |
| **LILLY TIMBER SERVICES, INC.** \* | |
| \* | |
| **Defendant.** \* | |
| \* | |
| \*\*\*\*\*\* | |

# REPORT AND RECOMMENDATIONS

This "Report and Recommendations" addresses the "Motion for Default Judgment" ("Motion") filed by the Trustees of the following: (a) National Electrical Benefit Fund ("NEBF"); and (b) National Electrical Annuity Plan ("NEAP") (collectively, "Plaintiffs"). (ECF No. 15).[1] Plaintiffs brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132 and 1145, ("ERISA") to recover delinquent contributions and other related relief from Lilly Timber Services, Inc. ("Defendant").

Pursuant to 28 U.S.C. § 636, and Local Rule 301, the Honorable Theodore D. Chuang referred this matter to me to author a report and to make recommendations. (ECF No. 16). I do not believe that a hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). As set forth more fully below, I ultimately recommend that Plaintiffs' "Motion for Default Judgment" be **GRANTED**, and that damages be awarded as set forth herein.

---

[1] NEBF is a defined benefit plan, pursuant to 29 U.S.C. § 1002(35), and NEAP is a defined contribution plan, pursuant to 29 U.S.C. § 1002(34). (ECF No. 1, ¶¶ 4-5, "Complaint"). Both plans were established pursuant to trust agreements. (ECF Nos. 15-7, 15-8).

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

    A.  **Factual Background: The Agreements Related to Contributions to the Benefit Funds**

Plaintiffs are trustees and the authorized collection fiduciaries and agents of the NEBF and NEAP Funds ("Benefit Funds"), which were established pursuant to trust agreements. (Complaint, ¶¶ 4, 5; ECF Nos. 15-7; 15-8). On July 26, 2019, the Defendant signed a Letter of Assent related to a collective bargaining agreement between local chapters of the International Brotherhood of Electrical Workers Union ("IBEW") and local chapters of the National Electrical Contractors Association ("NECA"). (ECF No. 15-5). By signing the Letter of Assent, the Defendant agreed to be bound by the collective bargaining agreement and the NEBF and NEAP trust agreements. (ECF No. 15-4, p. 2). Specifically, the Defendant agreed to make monthly contributions to the Benefit Funds on behalf of its union member employees, as well as to submit monthly payroll reports to NEBF and NEAP of the hours worked by those covered employees. (ECF No. 15-4, p. 2; 15-6, pp. 15, 18; 15-7, p. 2; 15-8, p. 3).

The amounts of the monthly contributions to the Benefit Funds were based on the hours worked by the Defendant's employees. For the NEBF, contributions were to be paid "at the rate of 3% of the gross labor payroll," and for NEAP, contributions were to be paid "at the rate of 19% of the gross monthly payroll paid to bargaining members." (ECF Nos. 15-4, p. 2; 15-6, pp. 15,18; 15-7, p. 2). In order to help the Trustees track the contribution amounts due, the Defendant was required to provide reports to NEBF and NEAP by no later than fifteen (15) days following the end of each calendar month. (ECF Nos. 15-6, pp. 15, 18; 15-7, p. 6; 15-8, p. 5). If the Defendant failed to timely submit contributions, the trust agreements for the Benefit Funds stipulated that various penalties applied. (ECF Nos. 15-7, pp. 7-8; 15-8, pp. 5-6). In particular, the Benefit Funds may collect the following based on the delinquent contributions: (1) interest at a rate of ten percent

(10%) per annum, compounded monthly; (2) liquidated damages in the amount of twenty percent (20%); (3) audit fees; and (4) attorney's fees and other costs incurred in collecting the delinquent amounts, which are termed "collections costs." (ECF Nos. 15-7, pp. 7-8; 15-8, pp. 5-6).

### B. Procedural Background

On February 17, 2023, Plaintiffs filed a Complaint against the Defendant alleging breach of the collective bargaining and trust agreements that established the Benefit Funds. (ECF No. 1). Plaintiffs are seeking to collect unpaid contributions allegedly owed to the Benefit Funds, accrued interest, and liquidated damages for work performed "during the year 2020." (Complaint, ¶¶ 34-35). The Plaintiffs also seek audit costs, court costs, an award of reasonable attorney's fees, and an order that the Defendant provide both the NEBF and NEAP with access to its payroll records "for the period January 1, 2021 to December 31, 2022 so that the necessary compliance review can be completed." (*Id*.). [2]

An affidavit completed by a private process server describes that on March 2, 2023, the Defendant was served with the Complaint. (ECF No. 8). The executed summons and certificate of service was returned and filed with the Court on March 14, 2023. (ECF Nos. 6, 8, 9). Defendant failed to file a responsive pleading within the 21-day period after effective service, provided by the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which was March 23, 2023. *See* Fed. R. Civ. P. (4); Fed. R. Civ. P. (12)(a)(1)(A)(i).

On March 24, 2023, Plaintiffs filed a "Motion for Clerk's Entry of Default," which had an affidavit in support thereto. (ECF No. 10).  On March 30, 2023, the Clerk of the Court entered a

---

[2] Although the Plaintiffs assert claims related to the production of payroll records in the Complaint, the Plaintiffs make no mention of such claims or make any request related thereto in the Motion. (ECF No. 15). In addition, the Plaintiffs do not submit any evidence reflecting a current interest to receive the payroll records for specified periods of time. (*See* ECF Nos. 15-1 through 15-13). As such, the Court does not analyze the payroll record issue or make findings related thereto.

default against the Defendant and sent a "Notice of Default" via mail to the address listed on the certificate of service. (ECF Nos. 9; 11; 12).

On April 26, 2023, Plaintiffs filed a notice requesting leave to file a "Motion for Entry of Default Judgment." (ECF No. 13). On April 27, 2023, Judge Chuang granted the Plaintiffs leave to file the same. (ECF No. 14). On May 2, 2023, Plaintiffs filed the Motion. (ECF No. 15). In support of the Motion, Plaintiffs appended the following documents: (a) an affidavit pertaining to reasonable attorney fees; (b) a declaration from Jennifer Bush Hawkins, Esq., and other documents supporting the request for an award of attorney's fees; (c) an "Affidavit of Total Amount Due Plaintiffs;" (d) a "Letter of Assent;" (e) a Trust Agreement for NEBF; (f) a "Collective Bargaining Agreement;" (g) a Trust Agreement for NEAP; (h) a Delinquency Audit Letter for NEBF; (i) a Delinquency Audit Letter for NEAP; (j) a "Delinquency Audit Report" for NEBF; and (k) a "Delinquency Audit Report" for NEAP. (ECF Nos. 15-1 through 15-12).

## II. DISCUSSION

### A. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") governs default judgments. Upon motion of a party, Rule 55(a) provides that a default judgment can be entered when a defendant fails to "plead or otherwise defend in accordance with [Rule 55]." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

When evaluating a motion for default judgment, a district court accepts as true the well-pleaded factual allegations in a complaint, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6). If a party's factual allegations are unchallenged because of a defendant's unresponsiveness, a district court has the discretion to grant default judgment. *See* Fed. R. Civ. P. 55(a)–(b); *see also*

*Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405–06 (D. Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with a complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment is appropriate when defendant is "unresponsive for more than a year" after denial of motion to dismiss, even though defendant was properly served with plaintiff's motions for entry of default and default judgment); *Park Corp v. Lexington Ins. Co.*, 82 F.2d 894, 896 (4th Cir. 1987) (affirming default judgment when defendant lost summons and did not respond within the proper timeframe).

More than five months have passed since the Plaintiffs served the Defendant with the Complaint. (ECF No. 8). The Defendant has neither filed an opposition nor otherwise defended against this case. Plaintiffs filed a certificate of service, demonstrating the Complaint was served upon a representative authorized to accept it. (ECF No. 9). Therefore, I find that Defendant has been available to respond or defend against this case but has failed to do so. Thus, I recommend that default judgment be entered.

### B. Damages

Although liability has been established, any allegation concerning the amount of damages is not deemed admitted just because a defendant fails to deny them in a responsive pleading. Fed. R. Civ. P. 8(b)(6). "With respect to a default judgment, '[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.'" *Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civ No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011). If the record supports the damages requested, however, then a court may award damages without a hearing. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. NKM-09-00004,

2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that no evidentiary hearing on damages was needed based on moving party's affidavit and printout submissions establishing amount of damages sought); *DirecTV, Inc. v. Yancey*, Civ. No. MFU-404-00011, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that where sufficient evidence exist to support damages, "[a] hearing in open court is not required"). The type and amount of damages that may be entered as a result of a party's default are limited to the amount that is demanded in a party's pleadings. Fed. R. Civ. P. 54(c).

   *1. Contributions*

Plaintiffs assert that the Defendant is delinquent in making contributions for the following periods: (a) January 1, 2020 to December 31, 2020, for the NEBF Fund; and (b) January 1, 2020 to December 31, 2020, for the NEAP Fund. (Complaint, ¶¶ 17, 28; ECF No. 15-4, p. 3).

I find that the applicable ERISA provisions and the trust agreements establishing the Benefit Funds, Letter of Assent, and collective bargaining agreement required the Defendant to have made timely contributions. 29 U.S.C. § 1145 (1980) of ERISA requires that:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

I find that the Plaintiffs are considered multi-employer plans, because they are multi-employer pension benefit plans. *See* 29 U.S.C. §§ 1002(2), (3), and 1145. The record demonstrates that the Defendant, through its agent/representative, Blake Lilly, is a party to the Letter of Assent related to the trust agreements and collective bargaining agreements governing the Benefit Funds. (ECF No. 15-5). By signing the Letter of Assent on July 26, 2019, the Defendant accepted the terms of both the trust and collective bargaining agreements. I further find that documents

governing the Benefit Funds obligated the Defendant to make contributions based upon payroll generated for each covered employee. (ECF Nos. 15-6, pp. 15, 18; 15-7, p. 2; 15-8, p. 3).

In order to recover delinquent contributions, multi-employer plans are permitted to file a civil action. *See* 29 U.S.C. § 1132. If a plaintiff prevails in its action, a district court is then required to award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorney's fees and costs of the action; and (5) "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

The Supreme Court has explained that a plan's ability to bring forth legal action is "an effective federal remedy to collect delinquent contributions." *Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988). In interpreting a collection action arising under 29 U.S.C. § 1145, the Fourth Circuit has reasoned that "a multi-employer plan can enforce, as written, the contribution requirements found in the controlling documents," because this "puts multi-employer plans in a stronger position than they otherwise occupy under common law contract principles." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997). Thus, I find that Plaintiffs have the right to collect unpaid contributions from the Defendant.

2. *Specific Recovery Sought*

As permitted by 29 U.S.C. § 1132(g), Plaintiffs seek the following for the NEBF Fund: (1) $5,454.00 for delinquent contributions; (2) $1,597.61 in accrued interest (computed by considering the delinquent contributions and imposing 10% interest per year that is compounded monthly); (3) $1,090.79 in liquidated damages, which is based on the amount of 20% of the contributions due; (4) $500.00 in audit costs; (5) $457.60 in attorney's fees; and (6) $276.00 in court costs. (ECF Nos. 15-1, p. 4; 15-4, p. 3). In addition, Plaintiffs seek the following for the NEAP Fund: (1)

7

$34,542.02 for delinquent contributions; (2) $10,118.27 in accrued interest (computed by considering the delinquent contributions and imposing 10% interest per year that is compounded monthly); (3) $6,908.41 in liquidated damages, which is based on the amount of 20% of the contributions due; (4) $500.00 in audit costs; (5) $457.60 in attorney's fees; and (6) $276.00 in court costs. (Complaint, ¶¶ 34-35; ECF No. 15-4, p. 3).

I have reviewed all of the Plaintiffs' supporting documentation to make my findings and recommendations.

    a. Unpaid Contributions

Plaintiffs assert that the Defendant owes contributions in the amount of $5,454.00 and $34,542.02 for the NEBF and NEAP Benefit Funds, respectively. (Complaint, ¶¶ 34-35; ECF No. 15-4, p. 3). I find that Plaintiffs' damages request is supported by exhibits and an affidavit from Brian Killian, a Contribution Compliance Manager for the Benefit Funds. (ECF Nos. 15-4, p. 3; 15-11; 15-12). Mr. Killian reviewed the trust agreements, collective bargaining agreement, and Letter of Assent, and, in accordance with them, calculated the total amount of contributions owed for each month to both funds by reviewing the Delinquency Audit Reports. (ECF Nos. 15-4, pp. 1-4; 15-11, p. 2; 15-12, p. 2). I also credit the spreadsheets provided by the Plaintiffs in the Delinquency Audit Reports, which includes a monthly breakdown of the contributions owed to the Benefit Funds, among other fees. (ECF Nos. 15-11; 15-12). The Defendant has not refuted Plaintiffs' evidence because it failed to file a responsive pleading. Thus, I recommend an award to the Plaintiffs for unpaid contributions in the amounts of $5,454.00 and $34,542.02 for the NEBF and NEAP Benefit Funds, respectively.

b. Accrued Interest on Unpaid Contributions

Plaintiffs claim the amounts of $1,597.61 and $10,118.27 in accrued interest for the NEBF and NEAP Benefit Funds, respectively. (ECF Nos. 15-11, p. 2; 15-12, p. 2). The ability to assess interest on late contributions is found in 29 U.S.C. § 1132(g)(2)(C)(i), which states that "interest on unpaid contributions shall be determined by using the rate provided under the plan." The trust agreements for the Benefit Funds establish guidelines for computing interest on late contributions. Interest will be assessed at the rate of 10% per annum, compounded monthly through the date the pleading was filed, "plus an award of interest accruing from the [date the pleading was filed] until contributions are paid in full." (ECF Nos. 15-7, p. 7; 15-8, p. 6). Here, there is undisputed evidence that the Defendant's unpaid contributions are delinquent. Therefore, Plaintiffs are entitled to interest assessed on the unpaid total. Accordingly, I recommend that the Court award Plaintiffs accrued interest in the amounts of $1,597.61 and $10,118.27 plus any further accrued interest consistent with the Benefit Funds' guidelines for computing interest on unpaid contributions upon date of payment. *See* 29 U.S.C. § 1132(g)(2)(E) ("the court shall award such other legal or equitable relief as [it] deems appropriate").

c. Liquidated Damages

Plaintiffs request liquidated damages in the amounts of $1,090.79 and $6,908.41 for the NEBF and NEAP Funds, respectively. (Complaint, ¶¶ 34-35; ECF Nos. 15-11, p. 2; 15-12, p. 2).

Under ERISA, a prevailing party shall be entitled to liquidated damages, "which can be awarded at the greater amount of either: (1) the [accrued] interest on delinquent contributions; or (2) the 'liquidated damages provided for under the plan and not in excess of 20 percent' of the delinquent contributions." *Trustees of the Nat'l Elec. Benefit Fund v. Loga Holding, LLC*, Civ No. PWG-21-2917, 2022 WL 3100759, at *3 (D. Md. Aug. 4, 2022) (citing 29 U.S.C. §

9

1132(g)(2)(C)(i)-(ii)).

Here, for the NEBF, the record reflects that Plaintiffs are seeking $1,090.79 in liquidated damages, per the rate set forth in the trust agreement related to the NEBF. (Complaint, ¶¶ 13, 34; ECF No. 15-11, p. 2). In contrast, Plaintiffs are seeking $1,597.61 in accrued interest. (ECF No. 15-11, p. 2). For the NEAP, the record reflects that Plaintiffs are seeking $6,908.41 in liquidated damages provided for under the plan, per the rate set forth in the trust agreement related to the NEAP. (Complaint, ¶ 24, 35; ECF No. 15-12, p. 2). In contrast, Plaintiffs are seeking $10,118.27 in accrued interest. (ECF No. 15-12, p. 2).

For both Benefit Funds, I find that the requested amounts of liquidated damages, at the twenty (20) percent rate set forth in the trust agreements, do not exceed what is permitted by the statute. (ECF Nos. 15-7, p. 7; 15-8, p. 5). In this case, though, for both the NEBF and the NEAP plans, an award of 20% of the delinquent contributions is less than the accrued interest. Accordingly, as a general matter, under ERISA, Plaintiffs could recover liquidated damages in the amount of $1,597.61 and $10,118.27 for the NEBF and NEAP funds respectively.

However, at this procedural juncture, in which Plaintiffs are seeking default judgment, the award granted "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed R. Civ. P. 54(c). In this case, in the Complaint, the Plaintiffs specifically request an award of $1,090.79 and $6,908.41 for liquidated damages. (Complaint, ¶¶ 34-35). As such, the Court must limit the liquidated damages award to what is pleaded in the Complaint. *See Nat'l Elec. Benefits Fund v. Allran/Hemmer Elec., LLC*, Civ. No. GJH-16-1184, 2017 WL 1273922, at *3 (D. Md. Jan. 6, 2017) ("The purpose of Rule 54(c)'s prohibition on damages that 'exceed in amount' … is to allow the defendant to be able to 'decide on the basis of the relief requested in the original

pleading whether to expend the time, effort, and money necessary to defend the action") (internal citations omitted).

Accordingly, I recommend awarding liquidated damages to the Plaintiffs in the amounts of $1,090.79 and $6,908.41 for the NEBF and NEAP Benefit Funds, respectively.

    d.  Audit Costs

Plaintiffs request audit fees in the amount of $500.00 on behalf of the NEBF and NEAP funds, respectively. (Complaint, ¶¶ 34-35; ECF Nos. 15-4, p. 3; 15-11, p. 2; 15-12, p. 2). I find this request is supported by the Delinquency Audit Letters, attached by the Plaintiffs to their Motion. (ECF Nos. 15-9, 15-10). The Plaintiffs retained Legacy Professionals, LLP to examine their payroll records that spanned from January 1, 2020 to December 31, 2020. The Delinquency Audit Letters show the amount that the Plaintiffs had to pay for the audits to be performed by Legacy Professionals LLP. (ECF Nos. 15-9, p. 2; 15-10, p. 2).

Under ERISA, if the court enters a judgment on behalf of a multiemployer plan, it shall permit the prevailing party to collect "such other legal or equitable relief as the court deems appropriate," which may include audit fees. *See* 29 U.S.C. § 1132(g)(2)(E); *see Trustees of Nat'l Elec. Benefit Fund v. Code Eng'g Servs., Inc.*, Civ. No. WC-16-1685, 2016 WL 6926404, at *6 (D. Md. Nov. 28, 2016) (holding audit fees are allowed under ERISA); *see also Trustees of Nat'l Elec. Benefit Fund v. D.N.R. Elec. Contractors, Inc.*, Civ No. TJS-22-2901, 2023 WL 3580086, at *1 (D. Md. May 22, 2023) (same).

Here, the record reflects that the Plaintiffs are seeking $500.00 in audit costs for both the NEBF and NEAP Benefit Funds. As a preliminary matter, according to the trust agreements, the Plaintiffs are entitled to recover "all costs," which specifically includes audit costs incurred in determining the delinquency. (ECF Nos. 15-7, p. 7; 15-8, p. 6). In addition, the Court credits

Plaintiffs' Delinquency Audit Letter which demonstrates that they are entitled to the requested audit fees. (ECF Nos. 15-9, p. 2; 15-10, p. 2). The Defendant has not refuted Plaintiffs' evidence because it failed to file a responsive pleading. Thus, I recommend awarding audit costs to the Plaintiffs in the amount of $500.00 to each fund, respectively.

In sum, because Plaintiffs' damages sought are unrefuted, the Court will grant Plaintiffs' request for unpaid contributions, accrued interest, liquidated damages, as well as audit costs on the unpaid contributions, as permitted. Consequently, I recommend that the Court award damages to the Plaintiffs in the amounts of $8,642.40 for the NEBF Fund, and $52,068.70 for the NEAP Fund, plus any further accrued interest on unpaid contributions upon date of payment.

  e. <u>Attorney's Fees and Court Costs</u>

The statute, 29 U.S.C. § 1132(g)(2)(D), mandates that a district court award "reasonable attorneys' fees and costs of the action," where, as here, the requesting party prevails. In determining an award of attorney's fees, the "lodestar" approach, which is examining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," is the most appropriate method for the Court to utilize. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002); *Ideal Insulation, Inc.*, Civ No. ELH-11-832, 2011 WL 5151067, at *6 (D. Md. Oct. 27, 2011); *Int'l Painters & Allied Trades Indus. Pension Fund v. HG Professional Painting Inc.*, Civ. No. WDQ-11-172, 2011 WL 3744123, at *7 (D. Md Aug. 23, 2011); *see also Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award") (internal citations omitted).

A plaintiff "must show that the number of hours for which he [or she] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary."

*Travis v. Prime Lending*, Civ. No. 3:07cv00065, 2008 WL 2397330, at *4 (W.D. Va. June 12, 2008); *see* Appendix B of this district's "Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases" ("Guidelines") provides, in pertinent part, that lawyers admitted to the Bar for twenty years or more may reasonably bill $300-475/hour, and that lawyers admitted to the Bar for less than five years may reasonably bill $150-225/hour. See Guidelines, at ¶ 3.e, f.

In this case, the Plaintiffs request payments in the amounts of $733.60 for attorneys' fees and costs related to the NEBF, and $733.60 in attorneys' fees and costs related to the NEAP. In support, Plaintiffs offer a declaration from Jennifer Bush Hawkins, Esq., a partner at Potts-Dupre, Hawkins & Kramer, Chtd. (ECF No. 15-1). Ms. Hawkins, who has been a member of the Bar for more than twenty-five years, submits two charts. The NEBF chart reflects that she billed Plaintiffs for 0.4 hours of work at an hourly rate of $392.00, for a total fee of $156.80, and that Peter Tkach, her co-counsel, worked 1.6 hours at an hourly rate of $188.00 for a total fee of $300.80. (ECF No. 15-1, pp. 2-3). The NEAP chart reflects that Ms. Hawkins billed Plaintiffs for .4 hours of work at an hourly rate of $392.00, for a total fee of $156.80, and that Mr. Tkach, her co-counsel, worked 1.6 hours at an hourly rate of $188.00 for a total fee of $300.80. (ECF No. 15-1, pp. 3-4). According to Ms. Hawkins, the hours generated relate to reviewing the case file and preparing the Complaint and default judgment motions. (ECF No. 15-1, pp. 2-4). Ms. Hawkins' hourly rate falls within the suggested range, as does that of her co-counsel. *See* Local Rule, App'x B, at 3.e, f.[3] In addition, I find that a total of 2 hours is a reasonable amount of time expended for the work performed for NEAP, and 2 hours is a reasonable amount of time expended for the work performed for NEBF.

---

[3] Counsel for Plaintiffs also submitted the "Adjusted Laffey Matrix" of prevailing rates for an attorney practicing in Washington, D.C. (ECF No. 15-1). I do not find this information persuasive, as Appendix B, although not binding, presumptively set forth ranges of reasonable hourly rates based on an attorney's years of experience. *Gonzales v. Caron*, Civ. No. CBD-10-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011).

In addition, Plaintiffs seek court costs of $402.00 (court filing fee) and $150.00 (private process server fee) for total costs in the amount of $552.00, to be divided equally between both Benefit Funds. (ECF No. 15-1, p. 4). In support of the request, Plaintiffs provide an invoice from the process server. (ECF No. 15-3). I find that this type of cost is ordinarily charged to a client and is reasonable out-of-pocket expense. In addition, by statute, Plaintiffs are entitled to such court costs. *See* 29 U.S.C. § 1132(g)(2)(D). Accordingly, I recommend that the Court award $915.20 in attorneys' fees and $552.00 in court costs, which are to both be split evenly between the Plaintiffs.

### III.   CONCLUSION

In sum, I respectfully recommend that the Court, **GRANT** the Plaintiffs' "Motion for Default Judgment" against the Defendant (ECF No. 15). I recommend that the district court enter judgment in favor of the Plaintiffs in the following amounts:

**NEBF**

(a) Unpaid contributions in the amount of $5,454.00;

(b) Interest in the amount of $1,597.61 plus interest accrued upon the date of payment;

(c) Liquidated damages in the amount of $1,090.79;

(d) Audit costs in the amount of $500.00;

(e) Attorneys' fees of $457.60; and

(f) Court costs in the amount of $276.00.

**NEAP**

(a) Unpaid contributions in the amount of $34,542.02;

(b) Interest in the amount of $10,118.27 plus interest accrued upon the date of payment;

(c) Liquidated damages in the amount of $6,908.41;

(d) Audit costs in the amount of $500.00;

(e) Attorneys' fees of $457.60; and

(f) Court costs in the amount of $276.00.

Dated: August 14, 2023

                                                                        /s/
                                              The Honorable Gina L. Simms
                                              United States Magistrate Judge